DJF:GMT:jmh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE WILLIE BUFORD,** | : | **Civil No. 3:CV-16-0234** |
| **Plaintiff** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Schwab)** |
| **UNITED STATES OF AMERICA, et al.,** | : | |
| **Defendants** | : | **Filed Electronically** |

## DEFENDANT'S BRIEF IN SUPPORT OF THEIR
## SECOND MOTION FOR SUMMARY JUDGMENT

DAVID J. FREED
United States Attorney

s/ G. Michael Thiel
G. MICHAEL THIEL
Assistant U.S. Attorney
PA 72926
Joanne M. Hoffman
Paralegal Specialist
U.S. Attorney's Office
235 North Washington Ave.
P.O. Box 309
Scranton, PA 18503
Phone:  570-348-2800
Date: October 9, 2018          Fax: 570-348-2830

# TABLE OF CONTENTS

Procedural History ...................................................................................1

Statement of Material Facts .......................................................................2

   Facts Regarding Exhaustion .................................................................3

   Facts Regarding October 21, 2014 Incident .........................................3

Questions Presented ..................................................................................6

Argument..................................................................................................6

  I.   Buford failed to exhaust his administrative remedies. ....................6

  II.  Buford's assault and battery claim is barred by the discretionary  function exception..................................................................................8

  III. Buford's assault and battery claim fails as a matter of law...........................11

Conclusion ............................................................................................20

# TABLE OF AUTHORITIES

**Cases**

Bell v. Wolfish,
  441 U.S. 520 (1979) ...................................................................................13

Berkovitz v. United States,
  486 U.S. 531 (1988) ...................................................................................12

Bialowas v. United States,
  443 F.2d 1047 (3d Cir. 1971) .....................................................................10

Brooks v. Kyler,
  204 F.3d 102 (3d Cir. 2000) .......................................................................20

Cohen v. United States,
  151 F.3d 1338 (11th Cir. 1998) ..................................................................12

Deville v. Marcantel,
  567 F.3d 156 (5th Cir. 2009) ................................................................ 17, 18

Donaldson v. United States,
  281 F. App'x 75 (3d Cir. 2008) ..................................................................13

Dormu v. District of Columbia,
  795 F.Supp.2d, 7 (D.D.C. 2011)..................................................................18

Dull v. West Manchester Twp. Police Dep't,
  604 F.Supp.2d 739 (M.D. Pa. 2009) ..................................................... 16, 17

D'Errico v. DeFazio,
  763 A.2d 424 (Pa. Super. 2000) .................................................................16

Elrod v. Walker,
  No. 06-3115, 2011 WL 6372881 (D. Kan., Dec. 20, 2011).......................... 17, 18

Evicci v. Baker,
  190 F.Supp.2d 233 (D. Mass. 2002)............................................................17

Flythe v. District of Columbia,
   994 F.Supp.2d 50 (D.D.C. 2013) .................................................................. 17, 18

Garey v. Borough of Quakertown,
   Civil Action No. 12-799, 2012 WL 3562450 (E.D. Pa. 2012) .............. 15, 16, 17

Garrett v. United States,
   640 F.2d 24 (6th Cir. 1981) ..........................................................................10

Groman v. Township of Manalapan,
   47 F.3d 628 (3d Cir. 1995) ...........................................................................16

Hanson v. United States,
   712 F.Supp.2d 321 (D.N.J. 2010) ........................................................ 17, 18, 20

Heverly v. Simcox,
   No. 05-1370, 2006 WL 2927262 (M.D. Pa. Oct. 11, 2006)................................16

Hossic v. United States,
   682 F. Supp. 23 (MD PA 1987) ......................................................................15

Humphrey v. Landers,
   344 Fed. App'x 686 (2d Cir. 2009) .................................................................18

Jerves v. U.S.,
   966 F.2d 517 (9th Cir. 1992) ..........................................................................10

Jurzec v. Am. Motors Corp.,
   856 F.2d 1116 (8th Cir. 1988) ........................................................................12

Maravilla v. United States,
   867 F.Supp. 1363 (N.D. In. 1994) ............................................................ 17, 18

McNeil v. City of Easton,
   694 F. Supp. 2d 375 (E.D. Pa. 2010)......................................................... 20, 21

McNeil v. United States,
   508 U.S. 106 (1993) ................................................................................ 10, 11

Millbrook v. USA,
  Civ. No. 15-0832, 2018 WL 1583536 (MD PA Mar. 31, 2018)........................22

Miller v. Cate,
  86 Fed. App'x 830 (6th Cir. 2004) ................................................................ 17, 18

Pena v. Greffet,
  No. 12-0710, 2015 WL 3540060 (D.N.M. May 16, 2015) ..................................17

Plyler v. United States,
  900 F.2d 41 (4th Cir. 1990) ...............................................................................10

Porter v. USA,
  Civ. No. 15-0142, 2018 WL 1479384 (MD PA Mar. 27, 2018)........................21

Renk v. City of Pittsburgh,
  641 A.2d 289 (Pa. 1994)............................................................... 15, 16, 17, 18

Rhodes v. Chapman,
  452 U.S. 337 (1981) ............................................................................................13

Roma v. United States,
  344 F.3d 352 (3d Cir. 2003) ...............................................................................11

Russoli v. Salisbury Twp.,
  126 F.Supp.2d 821 (E.D. Pa. 2000).....................................................................16

Saltalamacchia v. Wentzel,
  Civil Action No. 3:14-CV-00868, 2014 WL 6908172 (M.D. Pa. 2014) .............16

Thornburgh v. Abbott,
  490 U.S. 401 (1989) ............................................................................................14

Tindell v. Beard,
  351 F.App'x 591 (3d Cir. 2009) ..........................................................................23

Ting v. United States,
  927 F.2d 1504 (9th Cir. 1991) ............................................................................17

iv

Turner v. Safley,
    482 U.S. 78 (1987) ........................................................................14

United States v. Burzynski Cancer Research Institute,
    819 F.2d 1301 (5th Cir. 1987) ......................................................10

United States v. Gaubert,
    499 U.S. 315 (1991) ......................................................................12

Whitley v. Albers,
    475 U.S. 312 (1986) ............................................................. 13, 20

## Statutes

28 U.S.C. § 1346(b) ...........................................................................15
28 U.S.C. § 2675(a) ...........................................................................10
28 U.S.C. § 2680(a) ...........................................................................11
42 Pa. C.S.A. § 8542 ..........................................................................15
42 Pa. C.S.A. § 8548(a) ......................................................................15
42 Pa. C.S.A. § 8550 ..........................................................................15

## Regulations

28 C.F.R. § 552.20 .............................................................................18
28 C.F.R. § 552.25 .............................................................................13

The United States of America, by and through undersigned counsel hereby files this brief in support of its second motion for summary judgment. The Court should grant Defendant summary judgment on the sole remaining assault and battery claim because Buford failed to exhaust his administrative remedies, his claim is precluded by the discretionary function exception, and/or, his claim fails as a matter of law.

## Procedural History

Buford filed this action on February 10, 2016.  (Doc. 1, Comp.)  He initially named the United States of America, Charles E. Samuels, J. Adami, DHO Chambers, and three unknown officers as defendants.  (Id.)  On April 19, 2016, the Court adopted a Report and Recommendation dismissing Defendant Samuels and directing the Clerk of Court to serve the United States of America, Defendant Adami, and the three unknown officers.  (Doc. 8, Order.)  On August 8, 2017, Defendants filed a Motion to Dismiss and for Summary Judgment that was fully briefed by the parties. (Doc. 32, 39, 40, 49, 50, 51.)

On January 2, 2018, the Magistrate Judge issued a Report and Recommendation recommending the Court: dismiss the official-capacity Bivens claims against Defendants Adami and Chambers for lack of jurisdiction; dismiss Lieutenant Johnson and the unknown defendants; grant summary judgment in favor

1

of Defendants Adami and Chambers as to Buford's <u>Bivens</u> claims against them in their individual capacities; and, grant summary judgment in favor of the United States as to Buford's FTCA claim regarding his cell placement with inmate James. (Doc. 53, Report and Recommendation, generally.)  The Magistrate Judge further recommended that the Court deny the United States' summary judgment motion regarding Buford's claim of being shot with pepper balls because the United States did not prove that the discretionary function exception applied; and, because the United States addressed the pepper ball allegation as a claim of negligence when it was more appropriate to construe that allegation as one of assault or battery and Defendants did not address it as such in their motion.  (Id., pp. 34-35, 38, 40.)  Over Buford's objections, the Court adopted the Report and Recommendation rendering an FTCA claim for assault and battery due to a pepper ball launcher the sole remaining claim.  (Doc. 54, 56.)

After engaging in discovery pursuant to a case management order, Defendant now files its second motion for summary judgment.  (Doc. 57.)

## Statement of Material Facts

Simultaneously with this brief, Defendant has filed a separate statement of material facts (SMF) setting forth the facts related to Buford's claim and refers the Court to that document, with its citations to the record, for a full recitation of the

2

facts.

## Facts Regarding Exhaustion[1]

Buford filed two requests for administrative relief relating to the October 21, 2014 incident. (Statement of Material Facts (SMF) ¶¶ 4-12.) Buford made no mention of an assault, battery, or staff intentionally shooting him with a pepper ball gun. (Id.) He, similarly, made no allegations that staff caused his eye injury. (Id.) Buford acknowledged that he made no mention of staff or intentional acts in at least one of his administrative tort forms. (Id. ¶¶ 13-14.)

## Facts Regarding October 21, 2014 Incident

On October 21, 2014, Buford and his cellmate were involved in an altercation. (Id. ¶¶ 15-16.) Neither inmate responded to verbal orders to cease their actions or to two short blasts from an MK-4 OC dispenser. (Id. ¶¶ 17-18.) The Operations Lieutenant then gave both inmates another direct order to cease their actions, with negative results. (Id. ¶¶ 19-20.) Both inmates cuffed up after the Operations Lieutenant administered two (2) five-to-eight round bursts from the pepper ball launcher. (Id. ¶¶ 21-22.) The inmates were removed from the cell and escorted to the showers where they were decontaminated for OC exposure, given clean clothing,

---

[1] Defendant notes that because it did not read Buford's Complaint as alleging an assault and battery claim prior to the Report and Recommendation, it did not address the issue of exhaustion of Buford's FTCA claim. Thus, Defendant does so now.

photographed, medically assessed, and placed in separate cells without further incident.  (Id. ¶ 23.)

It was not possible for staff to determine whether the events in the cell that day were due to a fight or an assault.  (Id. ¶ 27.)  Staff were required to respond and to force compliance with their directives.  (Id. ¶ 28.)

At the time of the incident, Buford had long, thick dreadlocks covering the back of his head. (Id. ¶ 24.)  Buford mistook the alleged impact of the pepper ball as a "tap" from staff. (Id. ¶ 25.)  After the alleged impact from the pepper ball, Buford suffered a burning sensation on the back of his neck.  (Id. ¶ 26.)

Buford was medically assessed after his fight with James and although he complained of difficulty breathing, he was noted to be speaking in complete sentences with no apparent shortness of breath, difficulty speaking, or difficulty breathing. (Id.  ¶¶ 29-31.)  He was noted to have an abrasion on his right arm and a laceration on his left lower lip.  (Id. ¶ 33.)  It was determined that no medical treatment was necessary at that time.  (Id. ¶ 34.) Buford made no mention of any other injuries sustained in the altercation.  (Id. ¶ 30.)

Buford purportedly submitted a sick call request the next day requesting medical staff evaluate "broken/ruptured blood vessel, occulus sininter (sic), post unprovoked attack by a prisoner" but made no mention of a pepper ball gun or any

intentional act by staff to injure him. (Id. ¶ 35.)  Buford was familiar with and had suffered from previous ruptured blood vessels in his eye due to uncontrolled diabetes. (Id. ¶ 36.)  Two days later at a medical evaluation, Buford reported seeing two black spots in his left eye that had slowly gotten larger over the past two days. (Id. ¶¶ 37-38.)

Because Buford is a diabetic, he has a routine eye examination at least once a year.  (Id. ¶ 47.)  Prior to the October 21, 2014 incident, on September 4, 2014, Buford went to the Eye Center for his routine diabetic eye check.  (Id. ¶ 48.)  His eye doctor noted some changes from his last examination and recommended evaluation by a retinal specialist. (Id. ¶ 49.)  On September 11, 2014, the Utilization Review Committee (URC) approved the evaluation at which time medical staff scheduled Buford's retinal specialist appointment.  (Id. ¶ 50.)

Buford was seen by outside retinal specialist, Dr. David Lightman, on October 27, 2014 pursuant to that previously scheduled appointment to evaluate changes observed during his routine annual exam. (Id. ¶ 51.)   Dr. Lightman noted there was no external injury to the left eye, but there was a mild vitreous hemorrhage in the left eye. (Id. ¶ 52.)  Dr. Lightman reassured Buford that the blood in his left eye was likely to go away over the next several weeks or months and no additional treatment was needed at that time. (Id. ¶ 53.) Buford returned to Dr. Lightman on April 8,

5

2015, at which time Dr. Lightman noted the vitreous hemorrhage in the left eye had resolved. (Id. ¶ 54.)

## Questions Presented

I.     Should summary judgment be granted in favor of Defendant as to Buford's assault and battery claim because Buford failed to exhaust his administrative remedies?

II.    Alternatively, should the Court grant summary judgment in favor of Defendant because Buford's assault and battery claim is barred by the discretionary function exception?

III.   Should summary judgment be entered in favor of Defendant because his assault and battery claim fails as a matter of law?

## Argument

Buford alleges "agents" of the United States caused him to suffer an eye injury by shooting him in the back of the head with pepper balls.  (Doc. 1, Compl.)  The Court construed Buford's allegations that he was shot with pepper balls as in intentional act of assault and battery claim.  (Doc. 53, R & R.)

## I.    Buford failed to exhaust his administrative remedies.

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Section 2675(a) of Title 28, United States Code, provides in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the

appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section . . .

28 U.S.C. § 2675(a) (emphasis added).  The requirement of administrative review and compliance with the claim procedure prescribed in 28 U.S.C. § 2675 is jurisdictional and cannot be waived.  McNeil v. United States, 508 U.S. 106 (1993); see also Bialowas v. United States, 443 F.2d 1047 (3d Cir. 1971); Jerves v. U.S., 966 F.2d 517, 519 (9th Cir. 1992); Plyler v. United States, 900 F.2d 41, 41-43 (4th Cir. 1990); United States v. Burzynski Cancer Research Institute, 819 F.2d 1301, 1306 (5th Cir. 1987), cert. denied, 484 U.S. 1065 (1988); Garrett v. United States, 640 F.2d 24, 25 (6th Cir. 1981).

In this case, the summary judgment evidence reveals that Buford's administrative tort claims filed regarding the October 21, 2014 incident make no mention of staff intentionally shooting him, an assault and battery, or even that staff caused his eye injury.  See SMF ¶¶ 4-14.  In fact, Buford admits that he made no claim that staff intentionally shot him or that he was subjected to an assault and battery by staff that caused his eye injury.  Id. ¶¶ 13-14.  Because Buford failed to file his administrative tort claim with the Bureau of Prisons and receive a final denial of his claims pursuant to 28 U.S.C. § 2675(a) prior to filing his lawsuit, the Court

lacks jurisdiction over the claims.  McNeil v. United States, 508 U.S. 106, 111-112 (1993) (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the federal lawsuit is filed); Roma v. United States, 344 F.3d 352, 363 (3d Cir. 2003) (noting "the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived.").  The United States is therefore entitled to summary judgment.

## II. Buford's assault and battery claim is barred by the discretionary function exception.

Should the Court find Buford has exhausted his administrative remedies, which Defendant disputes, the Court should grant Defendant summary judgment because Buford's claim is barred by the discretionary function exception.

The discretionary function exception imposes a significant limitation on FTCA claims, and provides that liability may not be premised on a claim against a government employee which is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty". 28 U.S.C. § 2680(a). To the extent an alleged act falls within the discretionary function exception, a court lacks subject matter jurisdiction. See Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998); Jurzec v. Am. Motors Corp., 856 F.2d 1116, 1118 (8th Cir. 1988). The United States Supreme Court has adopted a two-part inquiry with respect to the

discretionary function exception. First, a court must decide if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." If so, "the employee has no rightful option but to adhere to the directive." In order for the challenged governmental action to be considered discretionary, it must be the product of "judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988). The exception "covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).

If the act was discretionary under the first step, then the second part of the discretionary function inquiry requires that judgment or choice be based on "considerations of public policy." Berkovitz, 486 U.S. at 537. The primary focus of the second part of the inquiry is "on the nature of the actions taken and on whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325. The judgment exercised by prison administrators in adopting and executing policies and practices impacts the preservation of the prison's internal order and discipline and the maintenance of institutional safety and security. Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. 2008) (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979); Rhodes v. Chapman, 452 U.S. 337, 349 (1981); Whitley v. Albers, 475 U.S.

9

312, 321-22 (1986)). Ensuring the security and order of a federal prison necessarily implicates public policy consideration, satisfying the second part of the discretionary function inquiry.

Here, Buford claims BOP staff committed assault and battery when deploying non-lethal force to elicit compliance with officers' orders to cease participating in a physical altercation with this cellmate. Federal regulations allow the use of "less-than-lethal weapons, including those containing chemical agents only when . . . an inmate is barricaded . . . or cannot be approached without danger to self or others and . . . delay in bringing the situation under control would constitute a serious hazard to the inmate or others, or would result in a major disturbance." 28 C.F.R. § 552.25. However, the implementation of these duties are left to the discretion of Bureau of Prisons officials.

Buford cannot show that the conduct of BOP staff violated any prescribed policy, and the decisions about whether to use force, the type of force to use, the amount of force to use, and the use of chemical agents necessarily involve discretion and choice. As such, the first prong of the discretionary function analysis is satisfied. The second prong of the discretionary function exception analysis is met in this case because the decisions about whether to use force, the type of force to use, the amount of force to use, and the use of chemical agents are all susceptible to public policy

analysis because they involve judgments that affect the safety and security of the public, federal prisons, and the staff and inmates within a prison. As the Supreme Court has repeatedly recognized, broad deference is to be afforded to the discretion exercised by prison administrators in adopting and executing policies and practices to address the day-to-day complexities in operating a correctional facility. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Turner v. Safley, 482 U.S. 78, 85 (1987).

In sum, the decisions by BOP staff on October 21, 2014 of whether to use force, the type of force to use, the amount of force to use, and the use of chemical agents are all discretionary decisions protected by the discretionary function exception of the FTCA. As such, the Court lacks jurisdiction over Buford's assault and battery claims and the United States is entitled to judgment as a matter of law.

## III.   Buford's assault and battery claim fails as a matter of law.

Should the Court find that Buford's FTCA claims are not barred by the discretionary function exception which the United States disputes, the Court should still grant summary judgment in favor of the United States because Buford's FTCA claim fails.  Buford alleges he was shot in the head with a pepper ball gun causing injury to his eye. (Doc. 1, Compl.) The Court construed his allegations as an assault and battery claim. (Doc. 53, R & R.)

11

Under the FTCA, the law of the place where an act or omission occurs is to be applied. 28 U.S.C. § 1346(b). Thus, the law of Pennsylvania applies in this case. Hossic v. United States, 682 F. Supp. 23, 24-25 (MD PA 1987). A claim of excessive force under the FTCA in Pennsylvania requires a plaintiff to show that the officer used such unreasonable force that the "officer's conduct constitutes assault and battery." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). See also, Garey v. Borough of Quakertown, Civil Action No. 12-799, 2012 WL 3562450, at *5 (E.D. Pa. Aug. 20, 2012).[2] "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in the assault is actually done, though in ever so small a degree, upon the person." Renk, 641 A.2d at 293. See also Saltalamacchia v. Wentzel, Civil Action No. 3:14-CV-00868, 2014 WL 6908172, at * 21 (M.D. Pa. July 28, 2014) ("The tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff

---

[2] In Pennsylvania, the Political Subdivision Tort Claims Act provides municipal immunity from liability for damages resulting from an injury by municipal employees. 42 Pa. C.S.A. § 8542. This immunity extends to municipal employees acting within the scope of his duties. 42 Pa. C.S.A. § 8548(a). However, the immunity does not apply if it is judicially determined that the employee actions are the result of willful misconduct. 42 Pa. C.S.A. § 8550. Therefore, Pennsylvania case law addressing claims of assault and battery by municipal employees includes an analysis of willful misconduct.

actually experience such apprehension) (citing Heverly v. Simcox, No. 05-1370, 2006 WL 2927262, at *9 (M.D. Pa. Oct. 11, 2006); D'Errico v. DeFazio, 763 A.2d 424, 431, n.2 (Pa. Super. 2000)); Dull v. West Manchester Twp. Police Dep't, 604 F.Supp.2d 739, 754 (M.D. Pa. 2009) (same).

Courts have recognized that "[p]olice officers are privileged to commit these torts using a reasonable amount of force when effectuating an arrest." Dull, 604 F.Supp.2d at 754 (citing Groman v. Township of Manalapan, 47 F.3d 628, 633-34 (3d Cir. 1995); RESTATEMENT (SECOND) OF TORTS § 118, 132 (1965)). "A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest." Renk, 641 A.2d at 293; Garey, 2012 WL 3562450, at * 5 (quoting Russoli v. Salisbury Twp., 126 F.Supp.2d 821, 870 (E.D. Pa. 2000)); Dull, 604 F.Supp.2d at 754. Other states provide similar law enforcement privileges. See Deville v. Marcantel, 567 F.3d 156, 172-73 (5th Cir. 2009); Ting v. United States, 927 F.2d 1504, 1514 (9th Cir. 1991); Pena v. Greffet, No. 12-0710, 2015 WL 3540060, at *15-16 (D.N.M. May 16, 2015); Flythe v. District of Columbia, 994 F.Supp.2d 50, 72-73 (D.D.C. 2013); Elrod v. Walker, No. 06-3115, 2011 WL 6372881, at *10 (D. Kan., Dec. 20, 2011); Hanson v. United States, 712 F.Supp.2d 321, 329-30 (D.N.J.

2010); Maravilla v. United States, 867 F. Supp. 1363, 1380 (N.D. In. 1994). However, the use of unreasonable or excessive force dissolves the privilege. Renk, 537 Pa. at 76; Garey 2012 WL 3562450, at * 5; Dull, 604 F.Supp.2d at 754. See also Deville, 567 F.3d at 172; Ting, 927 F.2d at 1514; Pena, 2015 WL 3540060, at * 25; Flythe, 994 F.Supp.2d at 72; Elrod, 2011 WL 6372881, at *10; Hanson, 712 F.Supp.2d at 330; Evicci v. Baker, 190 F.Supp.2d 233, 239 (D. Mass. 2002); Maravilla, 867 F.Supp.2d at 1380.

When confronted with these issues, the courts have employed the same reasonableness test used in Fourth Amendment excessive force cases to decide assault and battery claims against police officers while making an arrest and by federal correctional officers confronting prison inmates who are attempting to evade detection of contraband. See Miller v. Cate, 86 Fed. App'x 830, 833 (6th Cir. 2004); Deville, 567 F.3d at 172-73; Maravilla, 867 F.Supp.2d at 1380). See also Elrod, 2011 WL 6372881, at *10; Hanson, 712 F.Supp.2d at 330-32. The essential elements of Pennsylvania's excessive force laws and assault and battery claims are nearly identical. See Renk, 641 A.2d at 293; Humphrey v. Landers, 344 Fed. App'x 686, 688 (2d Cir. 2009); Deville, 567 F.3d at 172; Miller, 86 Fed. App'x at 833; Elrod, 2011 WL 6372881, at *10-12 (assessing assault and battery claim under Fourth Amendment reasonableness standard); Hanson, 712 F.Supp.2d at 330;

Maravilla, 867 F. Supp. at 1380.  See also, Flythe v. District of Columbia, 994 F.Supp.2d 50, 73 (D.D.C. 2013) (stating, "The privilege standard 'is similar to the excessive force standard applied in the § 1983 context.'" (citing Dormu v. District of Columbia, 795 F.Supp.2d, 7, 28 (D.D.C. 2011)).  Likewise, federal regulations and BOP policy authorize a correctional officer to employ "the amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent serious property damage, and to ensure institution security and good order." 28 C.F.R. § 552.20

In Graham v. Connor, the Supreme Court discussed the reasonableness of an officer's use of force in the context of a Fourth Amendment claim.  The Court stated, "[t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. 386, 396(1989).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97.  The analysis of a use of force in the context of a Fourth Amendment claim does not include an assessment of the officer's intentions or the "malicious and sadistic" factor as is done in the assessment of a prison inmate's Eighth Amendment claim.

Id. at 397-98.  "[T]he 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397 (citations omitted).  Proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

In Hanson v. United States the United States District Court for the District of New Jersey measured the reasonableness of a correctional officer's actions under the factors used to assess force under the Eighth Amendment, namely:

> (1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

712 F. Supp.2d at 330 (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000); Whitley v. Albers, 475 U.S. 312, 321 (1986)).

In McNeil v. City of Easton, 694 F. Supp. 2d 375 (E.D. Pa. 2010), officers

attempted to detain plaintiff and when he would not comply, he was shot with a taser two times. The plaintiff in that case had ignored the officers' instructions and headed to an unsecured area in the dwelling at which time he was tased the first time. McNeil, 694 F. Supp.2d at 383-84. Once tased and on the floor, he again ignored officer directives to place his hands behind his back and cuff up resulting in a second shot from the taser. Id. The court reviewed the assault and battery claim in the context of a Fourth Amendment excessive force claim and concluded that because plaintiff "posed an immediate threat to the safety of the officers", "ignored officer instructions", and "suffered only minor injuries" where there "was significant possibility that plaintiff was violent and dangerous", the officers  did not use excessive force so that summary judgment was granted in officers' favor as to plaintiff's assault and battery claims. McNeil, 694 F. Supp.2d at 392-95, 400.

In the instant case, the summary judgment record demonstrates that Buford and his cellmate were engaged in a violent, physical altercation and ignored staff directives to cease their actions.  SMF ¶¶ 15-20. Staff attempted several methods, albeit unsuccessfully, to elicit Buford's compliance with their directives. Id. Staff were unable to ascertain with certainty whether Buford and his cellmate were involved in a fight or an assault so that force was required to obtain compliance. Id. ¶¶ 27-28.  The force used was brief - two (2) five-to-eight round bursts from the

17

pepper ball launcher – and only initiated after the two previous requests for compliance were ignored by two federal prison inmates engaged in a physical altercation. Id. ¶¶ 17-20, 21. Thus, the force used against Buford was reasonable under the circumstances and did not constitute an assault and battery. See Porter v. USA, Civ. No. 15-0142, 2018 WL 1479384 (MD PA Mar. 27, 2018) (granting summary judgment in favor of the United States on assault and battery claim where undisputed evidence establishes that the staff's action in taking inmate to the ground after inmate pulled away during an escorted move was reasonable under the circumstances and was not excessive).

Further, Buford's injury, if any, was not suffered as a result of staff's actions or the pepper ball gun. Specifically, immediately after the incident Buford was medically assessed and the only complaint offered was that he "could not breathe". SMF ¶¶ 29-30. Video and documentary evidence show that Buford was speaking in complete sentences, with no apparent shortness of breath, difficulty speaking, or difficulty breathing and no mention of eye, neck, or head pain. Id. ¶¶ 30-31. The next day, Buford purportedly submitted a sick call slip requesting evaluation because he had a ruptured blood vessel in his eye *after an altercation with his cellmate*. Id. ¶ 35.

Buford was familiar with ruptured blood vessels in the eye due to his history

18

of eye issues related to him being a diabetic.  Id. ¶ 36. Indeed, at his chronic eye care appointment just one month before this incident, changes were noted to his eyes such that it was recommended he see a retinal specialist. Id. ¶¶ 48-50.  Once evaluated by the retinal specialist, it was determined that Buford's eye issue would not require treatment and would resolve on its own just as identical issues suffered due to his diabetes and high blood pressure had done several times before.  Id. ¶¶ 52-56.  Thus, Buford did not sustain any injury let alone a minor injury during the incident such that summary judgment in Defendant's favor is warranted. See Millbrook v. USA, Civ. No. 15-0832, 2018 WL 1583536 (MD PA Mar. 31, 2018) (granting summary judgment in favor of Defendant on assault and battery claim because where video evidence "shows that an inmate did not suffer any physical distress, and a medical report indicates that he had no visible swelling or injuries, the court should conclude that no reasonable finder of fact could view the video of the incident and determine that the defendants acted maliciously and sadistically and may enter summary judgment." (quoting Tindell v. Beard, 351 F.App'x 591, 596 (3d Cir. 2009).)

In light of the aforementioned, the Court should grant summary judgment to the United States because, viewing the summary judgment record from the perspective of the officers tasked with breaking up the altercation between Buford and his cellmate, it was necessary for them to use force to stop the physically violent

altercation in the cell where neither inmate was adhering to officer directives to cease their violent behavior. The record also clearly reflects that Buford was not injured due to staff action.  Even if we were to disregard all of Defendant's competent summary judgment evidence relative to Buford's eye injury and accept Buford's allegations as true, the injury Buford sustained was minor and required no treatment. As such, the court should conclude that no reasonable finder of fact could view the evidence of record and determine that the defendants acted maliciously and sadistically.

**Conclusion**

Defendant requests this Court to grant its Motion for Summary Judgment.

Respectfully submitted,

DAVID J. FREED
United States Attorney

s/ G. Michael Thiel
G. MICHAEL THIEL
Assistant U.S. Attorney
PA 72926
Joanne M. Hoffman
Paralegal Specialist
U.S. Attorney's Office
235 North Washington Ave.
P.O. Box 309
Scranton, PA 18503
Phone:  570-348-2800
Date: October 9, 2018       Fax: 570-348-2830

20

DJF:GMT:jmh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**GEORGE WILLIE BUFORD,**      :   **Civil No. 3:CV-16-0234**
    **Plaintiff**              :
                               :   **(Judge Kane)**
        **v.**                 :
                               :   **(Magistrate Judge Schwab)**
**UNITED STATES OF AMERICA, et al.,** :
        **Defendants**         :   **Filed Electronically**

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on October 9, 2018, she served a copy of the attached

## DEFENDANT'S BRIEF IN SUPPORT OF
## ITS SECOND MOTION FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Scranton, Pennsylvania.

Addressee:

George W. Buford
30024-074
USP Lewisburg
PO Box 1000                           s/ Joanne M. Hoffman
Lewisburg, PA  17837                  Joanne M. Hoffman
                                      Paralegal Specialist