UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE WILLIE BUFORD, | : | CIVIL NO: 3:16-CV-00234 |
| | : | |
| Plaintiff | : | (Judge Kane) |
| | : | |
| v. | : | (Chief Magistrate Judge Schwab) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

## I.  Introduction.

Plaintiff George Willie Buford claims that his cellmate attacked him.  The only remaining claim is a Federal Tort Claims Act (FTCA) claim based on an officer shooting Buford in the back of the head with pepper balls while trying to break up the struggle between Buford and his cellmate.  The United States filed a motion for summary judgment.  Because the discretionary function exception to the FTCA applies, we recommend that the Court grant that motion.

## II.  Background and Procedural History.

Buford began this action in February of 2016, by filing a complaint naming as defendants: (1) the United States; (2) Charles Samuels, the Director of the

Bureau of Prisons (BOP); (3) J. Adami, a unit manager at the United States Penitentiary at Lewisburg, Pennsylvania; and (4) Discipline Hearing Officer Chambers.  Buford also named as defendants two unknown officers as well as one unknown lieutenant, whom he later identified as Lieutenant Johnson.

Buford alleges that in April of 2014, officers placed another inmate—James[1]—in his cell with him even though the cell was not rated for double occupancy under BOP Program Statement 1060.11.  According to Buford, although he did not hear it, James threatened him, and an officer issued James an incident report based on that threat.  Defendant Chambers found James guilty of making the threat.  Nevertheless, officers did not separate Buford and James.  And in October of 2014, James assaulted Buford.

According to Buford, when officers responded to the assault, they deployed a riot weapon against him while James held him in place.  Buford alleges that the officers shot him with pepper balls seven times in the back of his head at the base of his skull.  Because of the attack by James and the officers' response, Buford alleges, he suffered an injury to his eye.  He contends that medical personnel attempted to downplay his injury to conceal the actions of the officers "responsible for the inmate-coordinated attack." *Doc. 1* at 4.

---

[1] Although Buford did not provide the name of this inmate in his complaint, the parties have identified him as James.  For ease of reference, we will refer to the inmate as James.

Buford claims that the defendants subjected him to cruel and unusual punishment by forcing him to share a cell with James, who the defendants knew or should have known, would attack him.  He also claims that the United States failed to properly supervise and direct BOP employees to comply with policies and directives.  Buford sued the defendants in their official and individual capacities. He sought compensatory damages as well as injunctive relief.

In April of 2016, the Court dismissed the claims against defendant Samuels and directed the Clerk of Court to serve the complaint on the remaining defendants.  After some missteps, the complaint was served on defendants United States, Adami, and Chambers.  Because Buford did not provide the names of the two unknown officers, the complaint was not served on the two unknown officers. Nor was it served on Lieutenant Johnson, who no longer works for the BOP and for whom Buford did not provide a current address.

In August 2017, defendants United States, Adami, and Chambers filed a motion to dismiss and for summary judgment.  Based on a Report and Recommendation of the undersigned, the Court granted in part and denied in part that motion.  More specifically, the Court dismissed the *Bivens* claims against defendants Adami and Chambers in their official capacities because sovereign immunity barred those claims, and the Court granted defendants Adami and Chambers summary judgment as to the *Bivens* claims against them in their

3

individual capacities because Buford failed to exhaust available administrative remedies as to those claims.  Concluding that the discretionary function exception applied, the Court also granted the United States summary judgment as to the FTCA claim based on the placement of James in Buford's cell.  But the Court denied the United States summary judgment as to the FTCA claim based on an officer shooting Buford with pepper balls.  The Court also dismissed the claims against the unknown officers and Lieutenant Johnson because those defendants had not been served.  The United States then filed an answer to the complaint, and the parties engaged in discovery.

The only remaining claim is the FTCA claim against the United States based on an officer shooting Burford with pepper balls.  The United States filed a motion for summary judgment as to that claim.  That motion became ripe when the deadline for the United States to file a reply brief came and went without the filing of a reply brief.

### III.  Summary Judgment Standards.

The United States moves for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which

that party will bear the burden at trial," summary judgment is appropriate. *Celotex*,

477 U.S. at 322.  Summary judgment is also appropriate if the nonmoving party

provides merely colorable, conclusory, or speculative evidence. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla

of evidence supporting the nonmoving party and more than some metaphysical

doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A

dispute about a material fact is genuine only if there is a sufficient evidentiary

basis that would allow a reasonable fact finder to return a verdict for the non-

moving party. *Id.* at 248–49.  When "faced with a summary judgment motion, the

court must view the facts 'in the light most favorable to the nonmoving party.'"

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)

(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Further, a party that moves for summary judgment on an issue for which he bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id*. "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id*.

## IV.  Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the

numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.* The "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements," and "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." *Id.*

Here, the United States filed a statement of material facts in support of its motion for summary judgment. Buford filed a response albeit not as a separate document as Local Rule 56.1 specifies. Rather, Buford filed his response to the United States' statement of material facts as a separate section of his brief in opposition to the United States' motion. *See doc. 95* at 7–10. Because Buford is proceeding *pro se* and because his failure to file his response to the United States' statement of material facts as a separate document has not prejudiced the United States, we will accept Buford's response to the statement of material facts. And because Buford is the non-moving party, we accept his version of any properly disputed facts.[2]

_____

[2] We accept Buford's version of any properly disputed facts, but we do not accept his mere denial of certain facts without citation to supporting evidence. Further, we note that at the end of his brief in opposition, Buford includes the following language: "I, George Willie Buford, III, do hereby CERTIFY that the foregoing is TRUE and CORRECT to the best of my information, knowledge and belief." *Doc.*

Before we set forth the material facts, we must address an evidentiary issue. In support of its motion for summary judgment, the United States submitted, among other evidence, a declaration from J. Fosnot, a special investigative agent at USP-Lewisburg. *See Doc. 71-1* at 89–94. Fosnot attached to his declaration a "Form 583 Report of Incident" ("Incident Report"), which was submitted by Warden David Ebbert and which, among other things, contains a description of the incident involving Buford and James. *Id*. at 91–94. Fosnot certified in his declaration that the attached Incident Report: is a true and correct copy of records maintained by the BOP; was created at or near the time of the occurrence of the matters reflected in the report by someone with knowledge; and was made by the BOP as a regular practice. *Id*. at 89. Fosnot further states that he is "a custodian of the document[] or [is] otherwise qualified to execute this certification, pursuant to Fed. R. Evid. 803(6) and 902(11)." *Id*.

---

95 at 12. He then signed his name under the words "Attest True," and he cites to 28 U.S.C. § 1746, which provides that an unsworn declaration made under penalty of perjury in substantially the form set forth in the statute has the same force and effect as a sworn statement. Buford did not, however, include the required language of § 1746 that the statements in his brief were made under penalty of perjury. Thus, we do not consider the statements made by Buford in his brief as proper summary judgment evidence. *See United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019) (holding that "while an unsworn statement may be considered on summary judgment, an unsworn statement that has not been made under penalty of perjury cannot").

In addition to containing the certifications set forth above regarding the

Incident Report, paragraph 3 of Fosnot's declaration sets forth the following

summary of the incident involving Buford and James:

> On October 21, 2014, at approximately 5:11 pm the B-block #3 officer called for assistance after observing inmate Chad James, Register No. 29714-034 and inmate George Buford, Register No. 30024-074, fighting in cell B-325. The officer observed inmates James and Buford striking each other in the head and upper body with closed fists. Upon the arrival of responding staff, the inmates were ordered to cease their actions and submit to hand restraints. The inmates did not comply with this order and the officer administered two (2) two-second bursts from the MK-4 OC dispenser with negative results. The Operations Lieutenant then gave the inmates an order to cease their actions and submit to hand restraints, with negative results. The Operations Lieutenant administered two (2) two-second bursts from the MK-9 OC dispenser, with negative results. The Operations Lieutenant then gave both inmates another direct order to cease their actions, with negative results. The Operations Lieutenant administered two (2) five-to-eight round bursts from the pepper ball launcher. The inmates then submitted to hand restraints. The inmates were removed from the cell and escorted to the showers where they were decontaminated for OC exposure, given clean clothing, photographed, medically assessed, and placed in separate cells without further incident. Attachment A, Form 583 Report of Incident, Incident No. LEW-15-0025.

*Doc. 71-1* at 89. This summary is based on the attached Incident Report.

Buford objects to the declaration of Fosnot. He cites to Fed. R. Evid. 701,

which deals with opinion testimony by lay witnesses.[3] But that rule is not

---

[3] Buford also objects to the declaration of F. Frymoyer on the same basis. We need not address Buford's objection to Frymoyer's declaration because Frymoyer's

applicable because the statements made by Fosnot are not opinions.  Rather, Fosnot's declaration contains certifications concerning the Incident Report attached to the declaration as well as a paragraph (based on the attached Incident Report) summarizing the incident involving Buford and James.  Nonetheless, the crux of Buford's contention is that Fosnot's statements are not based on personal knowledge.  And Fed.R.Civ.P. 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

In certain circumstances, personal knowledge "'can be based on a review of relevant business files and records.'" *Saldana v. United States*, No. 3:16-CV-634, 2018 WL 1385211, at *7 (M.D. Pa. Mar. 19, 2018) (quoting *Del Rosario v. Labor Ready Se., Inc.*, 124 F. Supp. 3d 1300, 1316 (S.D. Fla. 2015)).  And here, Fosnot's declaration is based on the Incident Report.  Federal Rule of Evidence 803(6) excludes from the rule against hearsay:

> A record of an act, event, condition, opinion, or diagnosis if:
> **(A)** the record was made at or near the time by—or from information transmitted by—someone with knowledge;

---

declaration addresses whether Buford exhausted administrative remedies, an issue that we need not reach give that, as discussed below, we conclude that the discretionary function exception to the FTCA applies.

       **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

       **(C)** making the record was a regular practice of that activity;

       **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

       **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

As set forth above, Fosnot cites to Fed. R. Evid. 803(6) in his declaration, and he certified that he is a custodian of the Incident Report and that the Incident Report: is a true and correct copy of records maintained by the BOP; was created at or near the time of the occurrence of the matters reflected in the report by someone with knowledge; and was made by the BOP as a regular practice. *Id*. at 89. Buford's only objection to Fosnot's declaration is based on lack of personal knowledge. But Rule 803(6) does not require that the custodian of the record have personal knowledge of the underlying events reflected in the record. Rather, under Fed. R. Evid. 803(6), "a qualified witness only need 'have familiarity with the record-keeping system' and the ability to attest to the foundational requirements of Rule 803(6)." *United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993) (quoting *United States v. Pelullo*, 964 F.2d 193, 201–02 (3d Cir. 1992)). Buford does not contend that Fosnot's declaration does not satisfy the requirements of Rule 803(6). Thus, in the absence of any such objection, we will consider the Incident Report—

and Fosnot's declaration, which is based on the Incident Report—as proper summary judgment evidence.

The following facts regarding the events at issue are undisputed for purposes of the United States' motion for summary judgment.[4]  On October 21, 2014, at approximately 5:11 p.m. the B-block #3 officer called for assistance after observing James and Buford fighting in cell B-325. *Doc. 71* at ¶ 15, *Doc. 95* at 8, ¶ 15.  The officer observed James and Buford striking each other in the head and upper body with closed fists. *Doc. 71* at ¶ 16, *Doc. 95* at 8, ¶ 16.[5]  Upon the arrival of responding staff, the inmates were ordered to cease their actions and submit to hand restraints. *Doc. 71* at ¶ 17, *Doc. 95* at 8, ¶ 17.  The inmates did not comply with this order, and the officer administered two, two-second bursts from the MK-4 OC dispenser with negative results. *Doc. 71* at ¶ 18, *Doc. 95* at 8, ¶ 18.  The Operations Lieutenant then also administered two, two-second bursts from the

---

[4]  As discussed below, we conclude that the discretionary function exception to the FCTA applies.  As such, we set forth only those facts that are relevant to the issues surrounding whether the discretionary function exception applies.

[5]  Although Buford denies that he struck James, *see doc. 95* at 8, ¶ 16, Buford has not pointed to any record evidence to support that denial.  It is a litigant's duty to point to specific parts of the record that support his or her contentions; it is not the Court's job to comb through the record looking for evidence to support the claims. *Cf. United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

MK-9 OC dispenser, with negative results. *Doc. 71* at ¶ 19, *Doc. 95* at 8, ¶ 19.[6]
The Operations Lieutenant gave both inmates another direct order to cease their
actions, with negative results. *Doc. 71* at ¶ 20, *Doc. 95* at 8, ¶ 20.  The Operations
Lieutenant then administered two, five-to-eight round bursts from the pepper ball
launcher. *Doc. 71* at ¶ 21, *Doc. 95* at 8, ¶ 21.[7]  After that, the inmates submitted to
hand restraints. *Doc. 71* at ¶ 22, *Doc. 95* at 8, ¶ 22.  The inmates were removed
from the cell and escorted to the showers where they were decontaminated for OC
exposure, given clean clothing, photographed, medically assessed, and placed in
separate cells without further incident. *Doc. 71* at ¶ 23, *Doc. 95* at 8, ¶ 23.

## V.  Discussion.

The United States argues that it is entitled to summary judgment because,
among other reasons, the Court lacks subject-matter jurisdiction under the
discretionary function exception to the FTCA.

"Under the doctrine of sovereign immunity, the United States 'is immune
from suit save as it consents to be sued . . . and the terms of its consent to be sued
in any court define that court's jurisdiction to entertain the suit.'" *Cooper v. C.I.R.*,

---

[6]  Buford states that he agrees "in part" to this statement, and it is here that he
objects to Fosnot's declaration based on Fed. R. Evid. 701. *See doc. 95* at 8, ¶ 19.
We addressed that objection above.

[7]  *See supra* note 6.

718 F.3d 216, 220 (3d Cir. 2013) (quoting *U. S. v. Testan*, 424 U.S. 392, 399

(1976)).  "The FTCA 'was designed primarily to remove the sovereign immunity

of the United States from suits in tort and, with certain specific exceptions, to

render the Government liable in tort as a private individual would be under like

circumstances.'" *Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2004) (quoting

*Richards v. United States*, 369 U.S. 1, 6 (1962)).  Federal district courts generally

have jurisdiction over civil actions against the United States for damages "for

injury or loss of property, or personal injury or death caused by the negligent or

wrongful act or omission of any employee of the Government while acting within

the scope of his office or employment, under circumstances where the United

States, if a private person, would be liable to the claimant in accordance with the

law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The FTCA's waiver of sovereign immunity contains various exceptions that

are construed as affirmative defenses. *Pellegrino v. United States Transportation*

*Sec. Admin.,* 896 F.3d 207, 213 (3d Cir. 2018).  Those exceptions include the

discretionary function exception, which provides that the FTCA shall not apply to

"[a]ny claim based upon an act or omission of an employee of the Government . . .

based upon the exercise or performance or the failure to exercise or perform a

discretionary function or duty on the part of a federal agency or an employee of the

Government, whether or not the discretion involved be abused."  28 U.S.C.

§ 2680(a).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808 (1984).  Through the discretionary function exception, Congress sought "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort" and to "protect the Government from liability that would seriously handicap efficient government operations." *Id.* at 814.  "The discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment." *Berkovitz v. United States*, 486 U.S. 531, 539 (1988).

"As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012).  After that, a court uses a two-part test to determine whether the discretionary function exception applies. *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013).  "First, a court must 'consider whether the action is a matter of choice for the acting employee.'"

*Id.* (quoting *Berkovitz,* 486 U.S. at 536).  Second, if the conduct at issue involves an element of judgment, a court must then "determine whether the judgment exercised 'is of the kind that the discretionary function exception was designed to shield.'" *Id*. (quoting *Berkovitz,* 486 U.S. at 536).  While the plaintiff bears the burden of showing that his claim falls within the scope of the FTCA, the United States bears the burden of showing that the discretionary function exception applies. *Id*.

We begin by identifying the conduct at issue.  Here, Buford claims that the United States committed assault and battery by hitting him in the back of the head with pepper balls during the incident with James.

Next, we address whether the conduct at issue involved "an element of judgment or choice." *Berkovitz*, 486 U.S. at 536.  "If a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' the exception does not apply because 'the employee has no rightful option but to adhere to the directive.'" *S.R.P.*, 676 F.3d at 333 (quoting *Berkovitz,* 486 U.S. at 536).  But "[c]onduct is non-discretionary only if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow' and the government 'employee has no rightful option but to adhere to the directive.'" *Bryan v. United States*, 913 F.3d 356, 364 n.37 (3d Cir. 2019) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).

How BOP staff respond to prisoners fighting or to one prisoner attacking another prisoner involves an element of judgment or choice. *See Rivera v. United States*, 3:12-CV-1339, 2013 WL 5492483 at *10 (M.D. Pa. Oct. 2, 2013) (holding that discretionary function exception barred a prisoner's claim that staff stood idly by and watched another inmate attack the prisoner in a recreation cage because staff have discretion to choose how to respond to an attack even though a prison policy provided that "it is mandatory that employees respond immediately and effectively to all emergency situations").  18 U.S.C. § 4042 provides that the Bureau of Prisons shall "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and shall "provide for the protection . . . of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2) and (3).  But § 4042 does not prescribe a particular course of action for the BOP to fulfill its obligation to protect prisoners. *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018).

But where a prisoner bases his claim on other regulations or policies that take away the discretion of prison staff, courts have held that the discretionary function exception is not applicable. *See, e.g.*, *Gray v. United States,* 486 F. App'x 975, 978 (3d Cir. 2012) (holding that the United States did not show that the discretionary function exception applied to prisoner's claim that officer was negligent by failing to retrieve a razor from another inmate, who subsequently

attacked the prisoner, given that there was a mandatory policy requiring that razors

be accounted for and disposed of at the end of an inmate's shower).  Here, Buford

points to 28 C.F.R. § 552.25, which governs the use of weapons such as the pepper

ball gun used to break up Buford and James:

> (a) The Warden may authorize the use of less-than-lethal
> weapons, including those containing chemical agents, only
> when the situation is such that the inmate:
>
>   (1) Is armed and/or barricaded; or
>
>   (2) Cannot be approached without danger to self or others;
> and
>
>   (3) It is determined that a delay in bringing the situation
> under control would constitute a serious hazard to the inmate or
> others, or would result in a major disturbance or serious
> property damage.
>
> (b) The Warden may delegate the authority under this
> regulation to one or more supervisors on duty and physically
> present, but not below the position of Lieutenant.

Buford suggests that a Lieutenant did not authorized the use of chemical

weapons in this case.  He suggests that J. Young was the officer who first used

chemical weapons, and he contends that in answers to interrogatories, the United

States has stated that "J. Young was NOT a lieutenant at the 21 October 2014

incident." *Doc. 95* at 6.  According to Buford, "[t]his means that Young's use of

the MK-4 OC dispenser" violated § 552.25(b).  But Buford has not submitted

the United States' response to the interrogatory to the Court.  Moreover, Buford

alleges that he was injured by the pepper balls hitting him in the back of the

20

head.  He does not allege that the initial use of the MK-4 OC injured him.  And, as set forth above, it is undisputed for purposes of the United States' motion for summary judgment, that an "Operations Lieutenant" administered two, five-to-eight round bursts from the pepper ball launcher. *Doc. 71* at ¶ 21, *Doc. 95* at 8, ¶ 21.[8]  Thus, there is no reasonable basis to conclude that the conduct at issue violated 28 U.S.C. § 552.25(b).  And because "prison staff had discretion to choose how to respond" to an altercation between inmates, *Rivera,* 2013 WL 5492483, at *10, this case satisfies the first prong of the discretionary function test.

Thus, we turn to the second prong of the discretionary function test, which is "whether the judgment exercised 'is of the kind that the discretionary function exception was designed to shield.'" *Baer*, 722 F.3d at 172 (quoting *Berkovitz,* 486 U.S. at 536).  "'Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy . . . the exception protects only governmental actions and decisions based on considerations of public policy.'" *S.R.P.*, 676 F.3d at 333 (quoting *Gaubert*, 499 U.S. at 323).  "The 'focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis.'"

---

[8]  *See supra* note 6.

*Mitchell v. United States*, 225 F.3d 361, 364 (3d Cir. 2000) (quoting *Gaubert*, 499 U.S. at 325).

How to respond to an altercation between inmates involves issue of prison security. *See Davis v. United States*, No. 7:10-CV-00005, 2010 WL 2754321, at *7 (W.D. Va. July 12, 2010) ("Decisions about when and how to intervene in an inmate fight are 'part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons.'" (quoting *Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998)). And "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Rinaldi*, 904 F.3d at 273–74 (quoting *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)). Thus, the second prong of the discretionary function test is met because the decision to use the pepper ball gun to separate Buford and James is the kind of decision that the discretionary function exception was designed to shield. *See generally Ruiz v. United States*, 664 F. App'x 130, 133 (3d Cir. 2016) (stating in connection with a claim based on the assignment of cellmates that "a judgment as to how best to protect one prisoner from fighting with another is necessarily one 'of the kind that the discretionary function exception was designed to shield'" (quoting *Gaubert*, 499 U.S. at 322–23)).

22

In sum, the discretionary exception applies to Buford's remaining claim.

## VI. Recommendation.

Based on the foregoing, we recommend that the Court grant the United

States' motion for summary judgment (doc. 70).

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within
fourteen (14) days after being served with a copy thereof.  Such party
shall file with the clerk of court, and serve on the magistrate judge and
all parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to
which objection is made and the basis for such objections.  The
briefing requirements set forth in Local Rule 72.2 shall apply.  A
judge shall make a de novo determination of those portions of the
report or specified proposed findings or recommendations to which
objection is made and may accept, reject, or modify, in whole or in
part, the findings or recommendations made by the magistrate judge.
The judge, however, need conduct a new hearing only in his or her
discretion or where required by law, and may consider the record
developed before the magistrate judge, making his or her own
determination on the basis of that record.  The judge may also receive
further evidence, recall witnesses or recommit the matter to the
magistrate judge with instructions.

Submitted this 11th day of July, 2019.

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge